UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRAVELPORT GLOBAL DISTRIBUTION
SYSTEMS B.V.,

       Petitioner,

  -against-          Civil Action No.
                 12 Civ. 3483 (DLC)

BELLVIEW AIRLINES LIMITED,

       Respondent,

---

## DECLARATION OF ANDREW ORJI

I, Andrew Orji, declare as follows:

1. I am the head of the legal department for Bellview Airlines Limited ("Bellview").

2. Bellview is a foreign business corporation organized and existing under the laws of the Federal Republic of Nigeria and does not conduct business in the United States.

3. Bellview's primary office is located at 66B Opebi Road, Ikeja, Lagos, Nigeria.

4. On or about March 21, 1997, Galileo International Partnership (which is now Travelport) entered into a Distribution Agreement with Bellview.

5. Pursuant to the Distribution Agreement, Bellview received exclusive rights to distribute the Galileo Computerized Reservation System ("CRS") services in Nigeria.

6. The Distribution Agreement, including section nineteen (19) of the Agreement, was drafted exclusively by Travelport.

7. On or about April 27, 2011, Travelport sent Bellview a letter stating that the Distribution Agreement would be terminated within twelve months of the date of the letter (first notice)

8. The termination letter stated that the final day of the Agreement shall be April 26, 2012.

9. After Travelport sent Bellview the termination letter, Travelport sought to negotiate a new agreement with Bellview for distribution of it CRS services.

10. However, Bellview requested that Travelport simply renew the existing Distribution Agreement pursuant to its original terms and Travelport agreed to and renewed the Distribution Agreement upon its original terms and agreed to provide Bellview with a side letter to that effect. Bellview has not been able to locate a copy of that sent letter.

11. On or about November 1, 2011, Bellview offered to submit the dispute to arbitration, pursuant to section 19.2 of the Distribution Agreement.

12. Specifically, Bellview requested by letter that Travelport sign a "Submission Agreement," which would submit the dispute to arbitration.

13. However, Travelport never responded to Bellview's arbitration submission request.

14. On or about November 3, 2011, Travelport unilaterally and prematurely terminated the Distribution Agreement.

15. After receiving notice of termination, Bellview again attempted to initiate arbitration to resolve the dispute.

16. However, Bellview learned that the Appointing Authority in the Arbitration Clause, the United States Council of Arbitration, did not exist.

17. Additionally, Bellview still had not received any response from Travelport relating to Bellview's submission agreement.

18. On or about November 10, 2011, Bellview filed a summons ("first summons") in the Federal High Court in the Federal Republic of Nigeria ("Nigeria High Court") to restrain Travelport from terminating the distribution agreement among other requests.

19. On or about November 14, 2011, the Nigeria High Court issued a restraining order, which enjoined Travelport from: (1) prematurely terminating the Distribution Agreement; and (2) appointing another entity to take over the distribution of its CRS services in Nigeria. *See* Exhibit A, annexed hereto.

20. On or about December 16, 2011, Travelport filed a response to Bellview's first summons, where Travelport agreed to submit the dispute to arbitration, but challenged the issuance of an injunction on the grounds that the Distribution Agreement had already been terminated.

21. On or about November 24, 2011, Travelport and the co-defendant filed two applications to discharge the restraining order and Bellview opposed both applications. *See* Exhibits B, C, D and E, annexed hereto.

22. The Nigeria High Court denied both of Travelport's applications to discharge the restraining order. Travelport has appealed this decision to the Nigeria Court of Appeal.

23. Even though the High Court issued a restraining order, Travelport continued to disregard the court order by working with Global Travel Distribution Nigeria Limited to take over the distribution of the Travelport's CRS service in Nigeria.

24. On or about March 7, 2012, Bellview commenced contempt proceedings against Travelport's directors and officers for disobeying a court order. *See* Exhibit F, annexed hereto.

25. On or about March 7, 2012, the Nigeria High Court issued a notice of disobedience of a court order stating that any continued violation of the November 14, 2011 restraining order could lead to contempt of court, including imprisonment. *See* Exhibit G, annexed hereto.

26. On or about March 15, 2012, Bellview filed a motion for leave to amend its first summons.

27. On or about April 26, 2012, Bellview filed another summons ("second summons") contesting and seeking damages for Travelport's first notice of termination of April

27, 2011 on the grounds that the Distribution Agreement was still in effect and could not be terminated at the time. *See* Exhibit H, annexed hereto.

28. On or about May 22, 2012, Travelport sent Bellview a letter stating that the twelve month period for the termination of the Distribution Agreement expired on April 26, 2012. *See* Exhibit I, annexed hereto.

29. On or about May 31, 2012, the Nigeria High Court is expected to issue a decision relating to Bellview's motion for leave to amend the first summons.

30. In the actions pending before the Nigeria High Court, one of Bellview's claims is that the agreement was effectively renewed and that, pursuant to the renewal, Bellview made extensive preparations for the continued execution of the Distribution Agreement.

31. In prosecuting its case in Nigeria, Bellview also intends to call at least ten witnesses with knowledge of the agreement, its performance, and the alleged breach, to testify before the Nigeria High Court.

32. All ten witnesses live in Lagos, Nigeria.

33. To require each witness to travel to the United States solely for arbitration would cause substantial delay, inconvenience and expense.

34. The resolution of this dispute will directly impact the distribution of Travelport's CRS services in Nigeria.

35. As such, the resolution of this dispute will have an impact on international commerce within Nigeria.

36. Bellview does not expect that the resolution of this dispute will have any impact on the international commerce within New York, or more generally, within the United States.

37. Considering the impact that this dispute has on the international commerce in Nigeria, the Nigeria High Court has a very strong interest in resolving this dispute.

38. At the time that the Distribution Agreement was originally executed, Bellview was a relatively new company and did not have legal counsel.

39. Before signing the Distribution Agreement, Bellview notified Travelport that if a dispute arose under the agreement, Bellview did not have the legal or financial resources to afford the costs of litigation outside of Nigeria.

40. When executing the Distribution Agreement, Travelport assured Bellview that the essence of the arbitration clause was to provide an amicable remedy for settling potential disputes.

41. Travelport further assured Bellview that the arbitration clause will not and does not exclude the jurisdiction of the Nigerian court and that it will be a non-exclusive arbitration clause

42. When discussing the jurisdictional clause, the Parties did not discuss the possibility of arbitration in the United States as an exclusive means of resolving any dispute between the parties.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lagos, Nigeria
May 25, 2012

_____
Andrew Orji