UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRAVELPORT GLOBAL DISTRIBUTION
SYSTEMS B.V.,

                    Petitioner,                    12 Civ. 3483 (DLC)
                                                                 ECF Case

       -against-

BELLVIEW AIRLINES LIMITED,

                    Respondent.
-------------------------------------------------------------X

## REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF PETITION TO COMPEL ARBITRATION AND FOR INJUNCTIVE RELIEF

                                                            CLYDE & CO US LLP
                                                            Chrysler Building
                                                            405 Lexington Avenue
                                                            New York, New York 10174
                                                            (212) 710-3900

                                                             Attorneys for Petitioner
                                                             Travelport Global Distribution Systems B.V.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................1

PRELIMINARY STATEMENT .......................................................................................1

ARGUMENT......................................................................................................................1

I. RESPONDENT'S OPPOSITION DISREGARDS THE STRONG
   U.S. POLICY AND CASE LAW COMPELLING ENFORCEMENT
   OF THE ARBITRATION CLAUSE IN THIS INTERNATIONAL
   COMMERCIAL AGREEMENT....................................................................................1

    A.   The Second Circuit Already Has Rejected a Similar Argument Regarding Alleged
   Lack of Jurisdiction Where the Party Had Agreed to Arbitrate ............................1

    B.   The Second Circuit Case Law on Point Confirms that Arbitration in the United States
   is the Exclusive Remedy Available to the Parties ................................................3

        1. Arbitration is Bellview's Exclusive Remedy .................................................3

        2. The Distribution Agreement Mandates Arbitration in the United States ..........................4

II. TRAVELPORT HAS NOT WAIVED ITS RIGHT TO COMPEL ARBITRATION ................6

III. THIS COURT SHOULD ENJOIN THE NIGERIAN PROCEEDINGS .....................................8

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Amaprop Ltd. v. Indiabulls Fin. Serv. Ltd.*, 2010 WL 1050988 (S.D.N.Y. Mar. 23, 2010)........ 8-9

*Chiarella v. Vetta Sports, Inc.*, No. 94-5933, 1994 WL 557114 (S.D.N.Y. Oct. 7, 1994)...............4

*Cordius Trust v. Kummerfeld*, 2000 WL 124807 (S.D.N.Y. Feb.2, 2000)....................... 1, 4n

*County of Suffolk v. Alcorn*, 266 F.3d 131 (2d Cir. 2001)............................................... 2n

*Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126 (2d Cir. 1997)................................................8

*Gangemi v. Gen. Elec. Co.*, 532 F.2d 861 (2d. Cir. 1976) .......................................... 3-4

*Ibeto Petrochemical Indus. v. M/T Beffen*, 412 F. Supp. 2d 285 (S.D.N.Y. 2005)....................9

*In Matter of Petition of HZI Research Ctr. v. Sun Instruments Japan Co., Inc.*,
  No. 94-2146, 1995 WL 562181 (S.D.N.Y. Sept. 20, 1995) ................................................ 2, 4-5

*Leadertex v. Morgantown Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995)........................7

*Local 771, I.AT.S.E., AFL-CIO v. RKO Gen., Inc. WOR Div.*, 546 F.2d 1107 (2d Cir. 1997)) ......3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842 (2d Cir. 1977) ................2

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)........................8

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995)........................................... 2n

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ................................................................................8

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2d Cir. 1997) ............................. 6-8

*Sunskar Ltd. v. CDII Trading, Inc.*, 2011 WL 5243165 (S.D.N.Y. Nov. 3, 2011)....................2

*Victory Transp. Inc. v. Comisaria General*, 336 F.2d 354 (2d Cir. 1964) .................................2

PRELIMINARY STATEMENT

Petitioner Travelport Global Distribution Systems B.V. respectfully submits this Memorandum of Law in reply to the Opposition of Respondent Bellview Airlines Limited to Travelport's petition to compel arbitration and for injunctive relief.

ARGUMENT

I

RESPONDENT'S OPPOSITION DISREGARDS THE STRONG U.S. POLICY
AND CASE LAW COMPELLING ENFORCEMENT OF THE ARBITRATION CLAUSE
IN THIS INTERNATIONAL COMMERCIAL AGREEMENT

A. The Second Circuit Already Has Rejected a Similar Argument Regarding Alleged Lack of Jurisdiction Where the Party Had Agreed to Arbitrate

Respondent incorrectly argues that it did not consent to jurisdiction in New York in the face of Clause 19.2 of the Distribution Agreement, which provides that any dispute or controversy may be submitted to arbitration *in the United States* governed by *New York law*. Respondent's position (*see* Memorandum of Points and Authorities of Respondent Bellview Airlines Limited in Opposition to Petitioner Travelport Global Distribution Systems' Petition to Compel Arbitration and for Injunctive Relief ("Respondent's Opposition"), pp. 5-7) reflects a fundamental misunderstanding of the strong public policy of court enforcement of arbitration clauses under the Federal Arbitration Act and the New York Convention. *See* Petitioner's Memorandum of Points & Authorities, pp. 5-6, 11-12; *see also Cordius Trust v. Kummerfeld,* 2000 WL 124807 (S.D.N.Y. Feb. 2, 2000). By entering into a contract subject to enforcement under the New York Convention as implemented by the Federal Arbitration Act, specifically providing for New York law and arbitration in the United States, Respondent consented to the jurisdiction of this New York federal

court.[1] *See In Matter of Petition of HZI Research Center v. Sun Instruments Japan Co., Inc.*, No. 94-2146, 1995 WL 562181, *3 (S.D.N.Y. Sept. 20, 1995) ("No question of this Court's jurisdiction over Sun [a Japanese corporation with its principal place of business in Tokyo, Japan] arises. The contract provides that New York law governs, and that *the United States* is one of two specified places for arbitration....") (emphasis added). *Accord Sunskar Ltd. v. CDII Trading, Inc.*, 2011 WL 5243165 (S.D.N.Y. Nov. 3, 2011). The Court clearly read the HZI contract, governed by New York law, "to mean New York" for jurisdictional purposes. *Id.*

There is no requirement that the arbitration clause state that arbitration be "in New York" for the Court to compel Respondent to arbitrate. In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977), the arbitration clause at issue stated that the "agreement and its enforcement shall be governed by the laws of the State of New York" but did not state "in New York." The Second Circuit stated:

> By agreeing to arbitrate in New York, where the United States Arbitration Act makes such agreements specifically enforceable, the Comisaria General *must be deemed to have consented to the jurisdiction of the court that would compel the arbitration proceeding* in New York. To hold otherwise would be to render the arbitration clause a nullity.

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) *quoting Victory Transp. Inc. v. Comisaria General*, 336 F.2d 354, 363 (2d Cir. 1964) (emphasis added).

---

[1] The vague and self-serving assertions, without even a pretense of personal knowledge, set forth in paragraphs 38-42 of the Declaration of Andrew Orji ("Orji Declaration"), must be rejected. Because Bellview Airlines' contract with Travelport "is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable." *See County of Suffolk v. Alcorn*, 266 F.3d 131, 138 (2d Cir. 2001) (applying New York law). Moreover, "[f]reedom of contract prevails in an arm's length transaction between sophisticated parties...and in the absence of countervailing public policy there is no reason to relieve them of the consequences of their bargain." *See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 695, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995). In this case, the public policy is enforcement, not disregard, of the arbitration clause and, in any event, devoid of any substance, the Orji Declaration is entitled to no consideration.

In *Merrill Lynch*, the conduct of the arbitration was to be pursuant to the rules of the New York Stock Exchange; here, by the United Nations' UNCITRAL rules. Just as the defendant in *Merrill Lynch* was deemed to have consented to New York jurisdiction, Respondent must be deemed to have so consented when it agreed to arbitration "in the United States, governed by New York law". The Court should reject Respondent's implicit argument that no court in the United States would have jurisdiction to compel Respondent to honor its contractual agreement to arbitrate in the United States despite expressly providing for arbitration in accordance with the United Nations' UNCITRAL rules. Respondent's construction would render Clause 19.2 of the Distribution Agreement a nullity – an obviously impermissible result.

**B.     The Second Circuit Case Law on Point Confirms that Arbitration in the United States is the Exclusive Remedy Available to the Parties**

Respondent's discussion of permissive versus mandatory forum selection clauses attempts to merge the only relevant issue: whether arbitration is mandatory under the agreement between the parties, with a forum non conveniens analysis of the forum selected.

**1.     Arbitration is Bellview's Exclusive Remedy**

The law in this Circuit is well-settled that the language contained in Clause 19.2 of the Distribution Agreement mandates arbitration as the exclusive remedy available to the parties. Although Respondent concedes that the Second Circuit has held that "[n]either the word 'may' nor any other language used in the Agreement implies that the parties had the option of invoking some remedy other than arbitration" (*see Local 771, I.AT.S.E., AFL-CIO v. RKO Gen., Inc. WOR Div.*, 546 F.2d 1107, 1115-6 (2d Cir. 1997)), Respondent nonetheless cites to cases that are not on point to argue that "this Circuit has also found that the use of the word 'may' signals permissive arbitration where the parties' agreement does not contemplate compulsory arbitration." *See* Respondent's Opposition, p. 18, *citing Gangemi v. Gen. Elec. Co.*, 532 F.2d 861, 866-68 (2d Cir.

3

1976); *Chiarella v. Vetta Sports, Inc.*, No. 94-5933, 1994 WL 557114 at *3 (S.D.N.Y. Oct. 7, 1994).

*Gangemi*, however, does not support Respondent's position because the Second Circuit actually acknowledged that "may be submitted to arbitration" language is a "concededly mandatory arbitration clause" in its review of a collective bargaining agreement. 532 F.2d at 865-66. It was only with reference to a type of grievance where consent of the principal parties (which had not been given) was required under the terms of that collective bargaining agreement that the Court held arbitration could not be compelled.

Respondent's reading of *Chiarella* similarly is mistaken. The decision does not stand for the proposition that Petitioner is not entitled to enforcement of the arbitration clause. The court found "that the arbitration provision did not have to be invoked, but once raised by one party, it became mandatory with respect to the other party." *Chiarella*, 1994 WL 557114 at *3. Petitioner does not dispute that it could have chosen not to raise the arbitration clause. Petitioner, however, did demand arbitration and thus arbitration became mandatory on the part of Bellview.

2. **The Distribution Agreement Mandates Arbitration in the United States**

Respondent's argument that the United States is not the exclusive forum for arbitration under the Distribution Agreement ignores the plain terms of the agreement and authority on point.[2] *See In Matter of Petition of HZI Research Ctr.*, 1995 WL 562181 (S.D.N.Y. Sept. 20, 1995).

*HZI Research Center* involved the most similar contractual language to the arbitration clause in the Distribution Agreement. The language provided that "[t]he construction,

---

[2] Respondent mistakenly places reliance upon case law analyzing forum selection clauses in contracts that do not provide for arbitration (*see* Respondent's Opposition, pp. 9-11), none of which were subject to the strong public policy of enforcement of arbitration clauses enunciated by the Federal Arbitration Act and given effect by the New York state and federal courts. *See Cordius Trust*, 200 WL 124807 at *3.

4

interpretation and performance of this Agreement shall be governed by the laws of the State of New York, United States of America" and that:

> [i]n the event of a dispute between the parties which cannot be resolved, the parties agree that each party shall select a third arbitrator, all of whom shall be Members of the American or Japanese Arbitrator Society, who will resolve the dispute.

*Id.* at *2. The Court read this clause as follows:

> The provision of the arbitration agreement for two possible venues, the United States (which I construe to mean New York) or Japan, has the limited effect of giving the party first demanding arbitration its choice. If Sun had first demanded arbitration in Japan, HZI would have been obligated to comply.

*Id.* at *3.

The Court concluded that the agreement provided for only two possible venues, the United States and Japan based upon the designation of the "American Arbitrator Society" and the "Japanese Arbitrator Society", respectively, neither of which existed. Here, Clauses 19.1 and 19.2 designated New York law as the governing law, the United States Council of Arbitration as the Appointing Authority[3], and that the arbitration is to be "in the United States in accordance with the UNCITRAL Arbitration rules" (obviously issued by the United Nations in New York). Applying *HZI Research Center*, the only sensible construction of the Distribution Agreement's arbitration provisions is to find that the parties agreed to mandatory arbitration in New York. Parties of course always are free to agree to conduct an arbitration in a locale different than set forth in the agreement, but neither party is entitled to obtain such relief by judicial fiat. Here, Petitioner has demanded arbitration in New York and respectfully submits that the Court should enforce its right to so arbitrate.

---

[3] Interestingly, Respondent appeared to recognize that arbitration in the United States was agreed by the parties (*see* Orji Declaration, ¶¶ 16-17 ("appointing authority in the Arbitration Clause, the United States Council of Arbitration, did not exist")), but nonetheless chose to sue in Nigeria. Respondent did not have that right if it wished to dispute Petitioner's right to terminate the Distribution Agreement – Respondent's only legal recourse was to commence an arbitration in the United States in accordance with the UNCITRAL rules.

II

**TRAVELPORT HAS NOT WAIVED ITS RIGHT TO COMPEL ARBITRATION**

Application of the Second Circuit's enunciation of the factors governing waiver, as set forth in *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107-10 (2d Cir. 1997), compels the conclusion that there was no waiver here. Moreover, unlike PPG, Petitioner did not commence litigation and then petition to compel arbitration. This Petitioner has never intended to waive arbitration and has not "evidenced a preference for litigation that supports a finding of waiver." *See id.* at 109.

*Time Elapsed from Commencement of Litigation.* In the *PPG* case, the plaintiff/petitioner commenced a court action and then, following five months of litigation and discovery, petitioned to compel arbitration. Here, Petitioner never commenced litigation. Instead, on November 1, 2011, Respondent offered to arbitrate Petitioner's decision to terminate the Distribution Agreement, followed by filing a summons in the Nigerian court nine days later.[4] *See* Speed Declaration, Exhibits G, I. Petitioner did not default but rather filed its response, which stated expressly that the dispute should be submitted to arbitration, and issued a Notice of Arbitration on or about January 26, 2012. *See* Respondent's Opposition, pp. 15-16; Speed Declaration, Exhibit K. On or about February 24, 2012, Respondent sent a letter stating that the arbitration clause "is incapable of being performed", which was followed by Respondent's motion on March 15, 2012 in the Nigerian court for leave to amend its originating summons.[5] Travelport opposed the relief,

---

[4] It is irrelevant that Respondent indicated a desire to arbitrate before Petitioner terminated the Distribution Agreement. Petitioner was not required to arbitrate whether it wished to invoke the termination clause in the Distribution Agreement. That Respondent disputes Petitioner's right to terminate is what gave rise to an arbitrable claim in the United States, but never a right to pursue a court action in Nigeria.

[5] Although the parties had anticipated a ruling on Bellview's motion yesterday, May 31, 2012, the court adjourned the hearing until June 15, 2012. *See* Reply Declaration of Diane Westwood Wilson sworn to May 31, 2012, submitted herewith.

*inter alia*, because this dispute must be arbitrated, and then filed the pending Petition on May 2, 2012. These facts do not demonstrate that Petitioner delayed so that it could litigate and conduct discovery in Nigeria before seeking enforcement in this Court of its contractual right to arbitrate.

*Amount of Litigation.* The litigation engaged in by Travelport in the Nigerian court has been limited and defensive in nature: responding to the summons filed by Bellview and seeking to have a restraining order obtained by Respondent lifted. *See* Orji Declaration ¶¶ 20-22. These facts stand in stark contrast to cases where the parties engaged in extensive motion practice and discovery before seeking to compel arbitration. *See PPG Indus., Inc.*, 128 F.3d at 108-09 (waiver when plaintiff commenced actions, engaged in discovery (including noticing depositions) before attempting to compel arbitration); *Leadertex v. Morgantown Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (waiver when defendant did not invoke arbitration at outset of court action, engaged in "energetic pursuit of discovery" for seven months and requested arbitration "at the eleventh hour" before trial).

*No Evidence of Intent to Litigate.* Travelport has not commenced litigation in Nigeria or anywhere, and has always maintained that the parties' dispute is subject to mandatory arbitration. *See* Speed Declaration, Exhibit J. Travelport's conduct clearly indicates no intent to litigate. *See PPG Indus., Inc.*, 128 F.3d at 109 (PPG failed to assert defense of arbitration "which would have resulted in a clear indication of PPG's intention to invoke its arbitration rights.") (further citation omitted).

*No Prejudice to Respondent.* That Respondent does not wish to be held to its agreement to arbitrate in the United States does not display prejudice to Respondent's position. Nor does the time and expense incurred by Respondent in prosecuting its ill-founded Nigerian court action constitute prejudice to Respondent. The prejudice has been sustained by Petitioner, which did not engage in *protracted litigation* in the Nigerian court before filing this Petition and certainly did

7

not force Bellview to litigate at all. *See PPG Indus., Inc.*, 128 F.3d at 107; *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997). No indicia of prejudice to Bellview is present. Instead, it would be prejudicial to Travelport to hold that it was not entitled to oppose preliminary relief by the Nigerian Court concurrent with Travelport's defense that the dispute must be arbitrated. Travelport has not "obtain[ed] information through discovery procedures not available in arbitration", and has not delayed "invocation of its contractual right to arbitrate." *See Doctor's Assocs., Inc.*, 107 F.3d at 131 (further citations omitted).

Clearly, Petitioner has not waived its right to arbitrate and Respondent has sustained no legal prejudice, only self-inflicted costs.

### III

### THIS COURT SHOULD ENJOIN THE NIGERIAN PROCEEDINGS

To argue against an injunction, Respondent had to ignore the well-settled U.S. public policy of enforcing arbitration agreements, particularly strong with respect to international disputes. *Amaprop Ltd. v. Indiabulls Fin. Serv. Ltd.*, 2010 WL 1050988, *5 (S.D.N.Y. Mar. 23, 2010) *citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). The Court, however, should not disregard the unambiguous terms of the Distribution Agreement, which call for arbitration of the parties' dispute under New York law in the United States. Even if assumed, *arguendo,* that "Nigeria is the jurisdiction with the strongest connection to this dispute", Respondent's point is immaterial because the parties did not agree to litigate or arbitrate its disputes in Nigeria. It similarly is of no consequence that Respondent has not previously "appeared in any U.S. arbitration proceedings", that the parties are foreign corporations (*see Amaprop Ltd.*, 2010 WL 1050988, where arbitration was compelled in New York between Cayman Islands and Indian company and anti-suit injunction issued against

8

Indian proceedings), or that the parties may have to bring witnesses to the site of the arbitration. This is not a case that calls for a forum non conveniens analysis. The question for this Court is whether the law requires Bellview to uphold its agreement to arbitrate in accordance with New York law in the United States.

The strong U.S. public policy of holding parties to their agreement to arbitrate can be realized here by compelling arbitration and enjoining Respondent from prosecuting in its home court. Respondent's unwillingness to withdraw its court proceedings and instead continue to seek additional and further relief from the Nigerian court can only be viewed as vexatious. Respondent's suggestion that they would have liked to arbitrate but elected to commence litigation because Travelport did not immediately commence arbitration is insincere because Bellview never commenced and continues to oppose arbitration. Moreover, Respondent's reliance on *Ibeto Petrochemical Indus. v. M/T Beffen*, 412 F. Supp. 2d 285 (S.D.N.Y. 2005), as support for its baseless forum-shopping charge is misplaced. That *plaintiff* commenced arbitration in London and then chose to pursue litigation in Nigeria. Travelport never commenced litigation or arbitration in Nigeria or elsewhere, and simply seeks enforcement of its right to arbitrate in the agreed location, the United States.

Bellview never was entitled to commence proceedings in the Nigerian court under the Distribution Agreement and has not discontinued those court proceedings despite being presented with the governing New York law requiring that this dispute be submitted to arbitration in New York. Travelport, in response to the Nigerian litigation, agreed that the parties' recourse is only through arbitration, but Bellview retracted its acknowledgement that the dispute is subject to mandatory arbitration and instead took the unsupportable position, which it does not even attempt to advance now, that the arbitration agreement was "incapable of being performed" because the "United States Council for Arbitration" is a non-existent body. *See* Speed Declaration, Exhibit L.

Respondent's contention that it has attempted to resolve the dispute "in good faith" rings hollow – it cannot be a demonstration of good faith to refuse to honor a contractual agreement to arbitrate.

Enjoining the Nigerian action is the only means to avoid the risk of inconsistent judgments, wholly attributable to Respondent's continuing disregard of the mandatory arbitration provision of the Distribution Agreement.  Petitioner respectfully submits that this case calls for the immediate issuance of an order compelling arbitration in New York and enjoining Respondent from continuing to prosecute the Nigerian court action or any other court proceedings.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that Travelport's Petition be granted in all respects, with costs and such other and further relief as the Court deems just.

Dated: New York, New York
       May 31, 2012

CLYDE & CO US LLP

By: _____
Diane Westwood Wilson (DW0520)
Chrysler Building
405 Lexington Avenue
New York, New York 10006
(212) 710-3910
diane.westwoodwilson@clydeco.us