```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TRAVELPORT GLOBAL DISTRIBUTION SYSTEMS  :
B.V.,                                   :
                       Petitioner,      :    12 Civ. 3483 (DLC)
                                        :
            -v-                         :    OPINION & ORDER
                                        :
BELLVIEW AIRLINES LIMITED               :
                       Respondent.      :
                                        :
----------------------------------------X
```

APPEARANCES

For petitioner Travelport Global Distribution Systems B.V.:
Diane Westwood Wilson
405 Lexington Avenue
New York, NY 10006

For respondent Bellview Airlines Limited:
Bartholomew J. Banino
Condon & Forsyth LLP
Times Square Tower
7 Times Square, 18th Floor
New York, NY 10036


DENISE COTE, District Judge:

　　　Travelport Global Distribution Systems B.V. ("Travelport") seeks an order compelling Bellview Airlines Limited ("Bellview") to arbitrate pursuant the terms of the parties' written Distribution Agreement.  For the following reasons, its petition is granted.

BACKGROUND

The following facts are undisputed unless otherwise noted. Travelport is a foreign business corporation organized and existing under the laws of the Netherlands. Bellview is a Nigeria corporation. On March 21, 1997, Travelport (then known as Galileo International Partnership) entered into a Distribution Agreement with Bellview, pursuant to which Bellview was to distribute in Nigeria a computerized travel reservation system owned by Travelport. The Distribution Agreement contained the following provision (the "Arbitration Provision"):

> 19.  GOVERNING LAW; JURISDICTION AND ARBITRATION
>
> 19.1 This Agreement and all disputes arising under or in connection with this Agreement, including actions in tort, shall be governed by the laws of the State of New York, United States of America.
>
> 19.2 Any dispute or controversy, or claim arising out of or related to this agreement, or the breach, termination or invalidity thereof, may be submitted to arbitration in the United States in accordance with the UNCITRAL Arbitration rules in force at the date of reference. The Appointing Authority shall be the United States Council of Arbitration and such appointment will be in accordance with its "Procedures for Arbitration."

On October 3, 2011, Travelport advised Bellview by letter that it would terminate the Distribution Agreement due to Bellview's alleged material breach of multiple obligations unless Bellview cured its breach within 30 days. By letter dated October 5, Bellview denied that it was in breach of the

agreement and requested that Travelport withdraw its notice of termination.  Travelport responded by letter dated October 31 declining to withdraw the notice of termination.  By letter dated November 1, Bellview stated as follows:

> Obviously a dispute has arisen with respect to the agreement and we think it is in the best interest of both parties to submit to arbitration in the spirit of clause 19.2 of the agreement.

Travelport terminated the Distribution Agreement by letter dated November 3.

On November 10, Bellview initiated an action (the "Nigeria Action") in the Federal High Court in the Federal Republic of Nigeria (the "Nigeria High Court") by filing a summons.  The summons sought a declaration that a dispute had arisen between the parties and that Bellview was entitled to refer the dispute to arbitration, and an order for injunctive relief.  On November 14, the Nigeria High Court issued a restraining order enjoining Travelport from terminating the Distribution Agreement and from appointing another entity to distribute its computerized travel reservation system in Nigeria.  On November 24, Travelport filed two applications to the Nigeria High Court to discharge the restraining order.  Both applications were denied.  Travelport submitted a response to Bellview's November 10 summons by affidavit dated December 16.  Travelport's response agreed that

the dispute should be submitted to arbitration but contested the other relief requested.

Travelport served a notice of arbitration on Bellview on January 26, 2012 seeking damages, costs, and a declaration that Travelport lawfully terminated the Distribution Agreement. By letter dated February 24, Bellview stated its intention to continue pursuing the Nigeria Action because it had concluded that the arbitral body specified in the Distribution Agreement, the United States Council of Arbitration, is a "non-existent body" and the Arbitration Provision was therefore "incapable of being performed."

On March 7, Bellview initiated contempt proceedings against Travelport's directors and officers for alleged violations of the November 14 restraining order. Also on March 7, the Nigeria High Court issued an order notifying these directors and officers that disobedience of its orders would result in them being found in contempt of court.

On March 15, Bellview filed a motion before the Nigeria High Court requesting leave to amend its November 10 summons in order to allow the Nigeria High Court to adjudicate the underlying dispute directly instead of referring it to arbitration. The motion alleges that the Arbitration Provision cannot be performed and "is not mandatory." On April 26, 2012, Bellview filed a second summons before the Nigeria High Court

for damages and declaratory and injunctive relief, requesting that the Nigeria High Court resolve the underlying dispute directly.

Traveport filed its petition in this Court to compel arbitration and for injunctive relied on May 2, 2012.  The petition was fully submitted on June 1.

## DISCUSSION

Travelport seeks, inter alia, an order compelling arbitration and for an anti-suit injunction as to the Nigeria Action.  The petition to compel arbitration is granted pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and the plain language of the Distribution Agreement.  An anti-suit injunction is granted pursuant to the five so-called "China Trade factors," enunciated in China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987), that are to be considered when determining whether a foreign action should be enjoined.  These two issues shall be addressed in turn.

I.   Petition to Compel Arbitration

   A.   Standard of Review

As a preliminary matter, the Distribution Agreement falls within the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (Dec. 29, 1970), reprinted at 9 U.S.C. § 201 ("New York Convention" or

5

"Convention"). Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, governs non-domestic arbitral agreements and codifies the New York Convention. See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 93 (2d Cir. 1999). Pursuant to 9 U.S.C. § 202, an agreement falls within the Convention when it "involv[es] parties domiciled or having their principal place of business outside" the United States. Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (citation omitted). Here, both parties fulfill this requirement: Travelport is organized and exists under the laws of the Netherlands and Bellview is a Nigerian corporation. Subject matter jurisdiction therefore exists in this case, and the Court has authority to compel arbitration.[1]  See 9 U.S.C. §§ 203, 206.

The FAA is "an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (citation omitted). "[W]hether parties

---

[1] The FAA does not "independently confer subject matter jurisdiction on the federal courts." Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009) (citation omitted). "Thus, there must be an independent basis of jurisdiction before a district court may entertain petitions under the Act." Id. (citation omitted). 9 U.S.C. § 203 provides subject matter jurisdiction for any "action or proceeding falling under the Convention." 9 U.S.C.A. § 203.

have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." Granite Rock Co. v. Int'l B'hood of Teamsters, 130 S.Ct. 2847, 2855 (2010) (citation omitted).  The FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1773 (2010).  Under § 4 of the FAA, "a party to an arbitration agreement may petition a United States district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" Id. (quoting 9 U.S.C. § 4).

It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Comm. Workers of Am., 475 U.S. 643, 648 (1986) (citation omitted).  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  In the context of motions to compel arbitration brought under the FAA, 9 U.S.C. § 4, unless the parties have unambiguously provided for an arbitrator to decide questions of arbitrability, it is for

7

courts to decide whether the parties agreed to arbitrate the claims at issue.  Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009).  In making this determination, the Court must consider: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration.  JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).  Here, as the only issues that Travelport wishes to submit to arbitration concern Bellview's alleged breach of contract and Travelport's right to terminate, the third and fourth issues are not relevant.  Furthermore, the respondent does not dispute that, if there was an agreement to arbitrate, this dispute would fall within the scope of that agreement.  Therefore, only the first issue, whether the parties agreed to arbitrate, must be considered.

    B.    The Arbitration Clause

The parties do not dispute that the Distribution Agreement constitutes a valid and enforceable contract; they dispute only whether the Arbitration Provision triggers "mandatory" or

"permissive" arbitration.[2]  In determining this issue, it is necessary to look first, of course, to the plain language of the agreement.  The Distribution Agreement states that disputes and claims arising out of or relating to the agreement "<u>may</u> be submitted to arbitration in the United States."  (Emphasis supplied.)  This language mandates arbitration in the instant case for two reasons: first, the respondent fails to distinguish the Arbitration Provision from similar provisions in other agreements that courts have consistently determined to be mandatory, and, second, absent such an interpretation the Arbitration Provision would be superfluous.

The overwhelming balance of authority in this circuit and elsewhere indicates that, absent some separate suggestion that an Arbitration Provision is intended to trigger permissive arbitration, provisions with the word "may" trigger mandatory arbitration.  <u>See, e.g.</u>, <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 204 n.1 (1985) ("The use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures."); <u>Local 771, I.A.T.S.E., AFL-CIO v. RKO Gen., Inc. WOR Div.</u>, 546 F.2d 1107, 1115-16 (2d Cir. 1977) (holding that agreement stating "the parties <u>may</u> submit to arbitration" triggers mandatory

---

[2] "Mandatory" arbitration requires arbitration if either of the parties elects to pursue it; "permissive" arbitration requires arbitration only with the consent of both parties.

9

arbitration and that "[n]either the word 'may' nor any other language used in the Agreement implies that the parties had the option of invoking some remedy other than arbitration") (emphasis supplied).

The respondent acknowledges the "many cases" in the Second Circuit that have construed arbitration clauses with the word "may" as mandatory clauses.  Indeed, it offers no explanation as to why the parties might have chosen to include the Arbitration Provision in the first place if it is not mandatory.  "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible."  LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).  After all, parties can always submit a dispute to arbitration if both consent.

Bellview makes two brief arguments in support of a permissive reading of the Arbitration Provision.  First, it mistakenly relies on Chiarella v. Vetta Sports, Inc., 94 Civ. 5933 (PKL), 1994 WL 557114 (S.D.N.Y. Oct. 7, 1994).  The court in Chiarella determined that language similar to that at issue here required arbitration if the provision was invoked by either party; arbitration was therefore mandatory upon plaintiff's bringing of a petition to compel arbitration.  See id. at *3.  This is exactly the same situation as in the case at hand, and

Travelport's petition to compel arbitration is granted for the same reason.

Bellview also attempts to introduce extrinsic evidence suggesting that the parties intended arbitration to be permissive.  According to the head of Bellview's legal department Andrew Orji ("Orji"), Travelport assured Bellview during negotiations that the Distribution Agreement would contain a "non-exclusive arbitration clause."  Orji further alleges that Bellview was "a relatively new company and did not have legal counsel" at that time.  The language of the contract is unambiguous, however, and recourse to extrinsic evidence is therefore not necessary.  See, e.g., Seabury Const. Corp. v. Jeffrey Chain Corp., 289 F.3d 63, 68 (2d Cir. 2002) ("Where the contract is unambiguous, courts must effectuate its plain language.").  Regardless, there is no suggestion that the declarant has any direct knowledge of the facts alleged.  In fact, the declarant states that he is the head of Bellview's legal department, but concedes that Bellview had no lawyer at the time of the events about which he testifies.

    C.    Imperfect Naming of Arbitral Authority

In its February 24, 2012 letter to Travelport, Bellview alleged that the Distribution Agreement's Arbitration Provision could not be performed because the "United States Council for Arbitration," the "Appointing Authority" named in the provision,

11

is a "non-existent body."  Bellview does not pursue this argument in its brief in opposition to this petition; regardless it is without merit.  The parties clearly expressed their intention to resolve this dispute through arbitration in the Distribution Agreement.  This was the parties' primary intention; the agreement as to the particular forum was secondary.  The Court may therefore designate a proper arbitral body.  <u>See, e.g.</u>, <u>In Matter of Petition of HZI Research Ctr. v. Sun Instruments Japan Co., Inc.</u>, 94 Civ. 2146 (CSH), 1995 WL 562181, at *3 (S.D.N.Y. Sept. 20, 1995) (collecting cites).

In this case, the UNCITRAL Arbitration Rules referenced in the agreement itself provide a method for constituting an arbitral tribunal in the absence of a prior agreement by the parties.  <u>See</u> UNCITRAL Arbitration Rules (as revised in 2010), Arts. 7.1, 9.1.[3]  The Distribution Agreement is construed so as to mandate composition of an arbitral panel in accordance with these rules.

---

[3] Article 7.1 states, "If the parties have not previously agreed on the number of arbitrators, and if within 30 days after the receipt by the respondent of the notice of arbitration the parties have not agreed that there shall be only one arbitrator, three arbitrators shall be appointed."  And Article 9.1 states, "If three arbitrators are to be appointed, each party shall appoint one arbitrator.  The two arbitrators thus appointed shall choose the third arbitrator who will act as the presiding arbitrator of the arbitral tribunal."  UNCITRAL Arbitration Rules (as revised in 2010), Arts. 7.1, 9.1.

D.   Venue and Personal Jurisdiction

Bellview argues that venue is not appropriate in the Southern District of New York and that this Court lacks personal jurisdiction over Bellview.  Bellview is wrong.  "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties."  Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  But "[w]hen a party agrees to arbitrate in a state, where the [FAA] makes such agreements specifically enforceable, that party must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in that state."  Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 979 (2d Cir. 1996) (citation omitted).

The Court has personal jurisdiction over Bellview because the parties agreed to arbitrate their disputes in the United States, pursuant to New York law, and in accordance with laws promulgated by UNCITRAL, a body within the United Nations system, which is headquartered in New York.  This constitutes an agreement to arbitrate in New York.  See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos, 553 F.2d 842, 843 n.1, 844 (2d Cir. 1977) (construing agreement that a contract is to be governed by New York law and that arbitration is to be conducted "under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange" as agreement to

13

arbitrate in New York).  Because Bellview agreed to be subject to personal jurisdiction in this district, Bellview is deemed to reside in this district for all venue purposes.  Venue is therefore proper.  See 28 U.S.C. § 1391(b) and (c).

Bellview argues that the Arbitration Provision constitutes a permissive forum selection clause because it lacks "specific language of exclusion," and that the Nigeria High Court is therefore a proper forum.  In making this argument, Bellview fails to address the clear authority, identified above, indicating that the Arbitration Provision is mandatory and that this Court has full authority to compel arbitration.  Moreover, the cases to which it cites do not construe arbitration clauses, but refer instead to forum selection clauses for litigation.  See, e.g., Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 226 (2d Cir. 2011).

E.   Waiver

Bellview asserts that Travelport waived its right to compel arbitration through its participation in the Nigeria Action.  This is incorrect.  In determining whether a party has waived its right to arbitration, factors that must be considered include: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice."  PPG Indus., Inc. v. Webster Auto

Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997).  Any determination of waiver "must be based on the circumstances and context of the particular case, with a healthy regard for the policy of promoting arbitration."  Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 130 (2d Cir. 1996 (citation omitted).  Courts must "resolve doubts as to whether waiver occurred in favor of arbitration."  Id.

The above factors strongly weigh against a finding of waiver.  It is true that almost six months elapsed between the initiation of the Nigeria Action and Travelport's petition to compel arbitration.  But, Travelport served Bellview with a notice of arbitration roughly two and a half months after commencement of the Nigeria Action, and Bellview only indicated its unwillingness to arbitrate on February 24, 2012.  In short, Travelport has consistently sought arbitration; there has been no excessive lapse of time.

Nor has there been a substantial amount of litigation in the Nigeria Action.  There have been no substantive rulings interpreting the Distribution Agreement, or findings as to Bellview's alleged material breach.  There has been no discovery.  Moreover, all of Travelport's filings -- seeking to resist the jurisdiction of the Nigeria High Court and lift the restraining order entered against it, and answering Bellview's summons -- have been defensive in nature.  Finally, Bellview can

provide no proof of prejudice because it is <u>Bellview</u> that is responsible for pursuing the Nigeria Action, and it is <u>Bellview</u> that has refused to arbitrate this dispute despite agreeing to mandatory arbitration in the Distribution Agreement and indicating at least twice since being served with the notice of termination that it would agree to arbitrate this dispute.

II.  Anti-Suit Injunction

Petitioner requests an order compelling the respondent to dismiss, or cause to be dismissed, the Nigeria Action.  Although "[i]t is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum," so, too, must courts be cognizant that "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint."  <u>Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 652 (2d Cir. 2004) (citation omitted).  This is because, "while such an injunction in terms is leveled against the party bringing the suit, it nonetheless effectively restricts the jurisdiction of the court of a foreign sovereign."  <u>Id.</u> at 655 (citation omitted).

There are two threshold requirements for the issuance of an anti-suit injunction as to foreign litigation: "(1) the parties must be the same in both matters, and (2) resolution of the case before the enjoining court must be dispositive of the action to

be enjoined." China Trade, 837 F.2d at 35.  Once these threshold requirements are met, there are five suggested factors for determining whether the foreign action should be enjoined -- the so-called "China Trade factors":

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

Id.

As to the two threshold requirements, first, there is no dispute that the parties in this action, Travelport and Bellview, are the same as the parties in the Nigeria Action. Second, judgment in this case is dispositive of the Nigeria Action because it will compel arbitration of those same issues that are currently being litigated in the Nigeria Action, namely Travelport's right to terminate the Distribution Agreement and Bellview's alleged material breach.  In other words, by virtue of this Court's judgment, the issues in the Nigeria Action "are reserved to arbitration" and cannot be litigated.  Paramedics, 369 F.3d at 653.

The China Trade factors also strongly support issuance of an injunction.  As to the first factor, "it is difficult to overstate the strong federal policy in favor of arbitration,"

17

Arciniaga v. General Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (citation omitted), and Bellview's efforts to "sidestep" arbitration strongly support an anti-suit injunction in this case. Paramedics, 369 F.3d at 654. The policy in favor of arbitration "applies with particular force in international disputes." Id. Although Bellview contends that the U.S. has no interest in the outcome of dispute because the parties are not American and the relevant events did not occur in the U.S., China Trade requires an analysis of federal policy, and the policy in support of arbitration is exceptionally strong.

As to the remaining factors, the Nigeria Action is vexatious. Despite Bellview's agreement to resolve this dispute in an arbitral forum, Bellview has obtained a restraining order and initiated contempt proceedings against Travelport through litigation. After initially requesting, arbitration, Bellview now resists it and, in its briefing papers, accuses Travelport of delay. These actions are nothing if not vexatious.

The delay and expense that have resulted from Bellview's actions are palpable. Travelport first accepted Bellview's invitation to arbitrate on January 26, 2012, but arbitration still has not commenced more than eight months later. Instead, Travelport has been forced to engage in litigation on multiple fronts and defend itself in an action on Bellview's home turf. Although the Nigeria Action has been ongoing for more than ten

months, discovery has not yet even begun.  The Nigeria High Court has apparently not yet ruled on Bellview's March 15 motion for leave to amend its summons.

The Nigeria Action also creates a serious risk of inconsistency and a race to judgment.  Absent an anti-suit injunction, the Nigeria High Court could go forward and try the case notwithstanding this Court's determination that arbitration is mandatory.  Accordingly, it is proper to enjoin Bellview from further pursuing the Nigeria Action, or any other action that would interfere with the parties' arbitration proceedings in New York.

## CONCLUSION

Travelport's May 2, 2012 petition to compel arbitration and for injunctive relief is granted.

SO ORDERED

Dated:   New York, New York
         September 10, 2012

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　DENISE COTE
　　　　　　　　　　　　　　　　　　　　United States District Judge